IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-563

 No. COA20-646

 Filed 19 October 2021

 Guilford County, Nos. 19 CRS 025493, -716926-27, -076677

 STATE OF NORTH CAROLINA

 v.

 ALLEN ANTHONY CAMPBELL, Defendant.

 Appeal by defendant from judgment entered 2 December 2019 by Judge Lora

 Christine Cubbage in Superior Court, Guilford County. Heard in the Court of

 Appeals 7 September 2021.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Thomas
 J. Campbell, for the State.

 Anne Bleyman, for defendant-appellant.

 STROUD, Chief Judge.

¶1 Allen Anthony Campbell (“Defendant”) appeals from a judgment entered upon

 jury verdicts finding him guilty of various traffic offenses. We agree with both

 Defendant and the State that the trial court’s comments during jury selection

 deprived Defendant of a fair and impartial trial. Defendant is entitled to a new trial.

 I. Background

¶2 On 22 July 2019, in connection with events occurring on 7 June 2019,
 STATE V. CAMPBELL

 2021-NCCOA-563

 Opinion of the Court

 Defendant was indicted with driving while license revoked, failure to heed light or

 siren, speeding, reckless driving to endanger, fictitious altered title or registration

 card, failure to wear a seat belt, fleeing to elude arrest, and attaining habitual felon

 status. Defendant’s jury trial began on 18 November 2019 in Guilford Country

 Superior Court. During jury selection, the prosecutor questioned the whole panel of

 potential jurors:

 Do any of the 12 of you have such strong personal beliefs -
 - some folks call it “sitting in judgment” -- that they don’t
 feel comfortable sitting and listening to the evidence in this
 case and rendering a verdict of either “guilty” or “not
 guilty” in this case? And that could be because of religious
 reasons or ethical reasons or moral reasons. Anybody have
 such strong beliefs?

 In response, prospective juror Hairston raised his hand. After explaining that the

 jury’s role is not “really judging a defendant” but, instead, “to determine whether the

 State has met its burden of proof[,]” the prosecutor inquired if juror Hairston would

 “still feel uncomfortable or . . . would be unable to perform the function of a juror in

 this case[.]” Juror Hairston said “yes” based on “religion[.]”

¶3 When the prosecutor moved to challenge juror Hairston for cause, the trial

 court interjected:

 THE COURT: Well, hold on. Let me question Mr. Hairston
 a little bit more. So, Mr. Hairston, you’re saying that you
 don’t think because of -- what religion are you?

 JUROR HAIRSTON: Non-denominational. A Baptist.
 STATE V. CAMPBELL

 2021-NCCOA-563

 Opinion of the Court

 THE COURT: So non-denomina[tional] Baptist, you don’t
 think that you could sit here and listen to the facts of the
 case and decide whether you think this gentleman over
 here is “guilty” or “not guilty”?

 JUROR HAIRSTON: No, ma’am.

 THE COURT: Okay. I’m going -- we’re going to excuse him
 for cause, but let me just say this, and especially to African
 Americans: Everyday we are in the newspaper stating we
 don’t get fairness in the judicial system. Every single day.
 But none of us -- most African Americans do not want to
 serve on a jury. And 90 percent of the time, it’s an African
 American defendant. So we walk off these juries and we
 leave open the opportunity for -- for juries to exist with no
 African American sitting on them, to give an African
 American defendant a fair trial. So we cannot keep
 complaining if we’re going to be part of the problem. Now
 I grew up Baptist, too. And there’s nothing about a Baptist
 background that says we can’t listen to the evidence and
 decide whether this gentleman, sitting over at this table,
 was treated the way he was supposed to be treated and was
 given -- was charged the way he was supposed to be
 charged. But if your -- your non-denomina[tional] Baptist
 tells you you can’t do that, you are now excused.

 The jury was impaneled, and the trial proceeded.

¶4 After presentation of the evidence, the trial court dismissed the fictious altered

 title or registration card charge. On 21 November 2019, the jury returned verdicts

 finding Defendant not guilty of failure to wear a seat belt, and guilty of the remaining

 charges. Defendant pleaded guilty to attaining habitual felon status. The trial court
 STATE V. CAMPBELL

 2021-NCCOA-563

 Opinion of the Court

 arrested the convictions for driving while license revoked and reckless driving, and

 sentenced Defendant to 86 to 116 months imprisonment. Defendant appeals.

 II. Trial Court’s Statements

¶5 Defendant argues he “was denied a fair trial in an atmosphere of judicial calm

 before an impartial judge and a jury with free will in violation of his rights.”

 (Capitalization altered.) Specifically, Defendant asserts his “due process rights to a

 fair trial were violated” because “he was tried by a judge with particular views on

 religion that intimidated the jurors from exercising their own beliefs” and “[t]he judge

 also gratuitously interjected race into the trial.” We agree.

 A. Preservation

¶6 Defendant acknowledges that he did not object to the trial court’s statements

 during jury selection. See N.C. R. App. P. 10(a)(1) (“In order to preserve an issue for

 appellate review, a party must have presented to the trial court a timely request,

 objection, or motion, stating the specific grounds for the ruling the party desired the

 court to make if the specific grounds were not apparent from the context.”).

 Defendant asserts his argument is preserved as a matter of law because the trial

 court violated North Carolina General Statute § 15-1222, which prohibits a trial judge

 from expressing “any opinion in the presence of the jury on any question of fact to be

 decided by the jury.” N.C. Gen. Stat. § 15A-1222 (2019); see also State v. Young, 324

 N.C. 489, 494, 380 S.E.2d 94, 97 (1989) (“A defendant’s failure to object to alleged
 STATE V. CAMPBELL

 2021-NCCOA-563

 Opinion of the Court

 expressions of opinion by the trial court in violation [N.C. Gen. Stat. § 15A-1222 and

 N.C. Gen. Stat. § 15A-1232] does not preclude his raising the issue on appeal.”).

 Alternatively, in the event this Court deems Defendant’s argument was not preserved

 as a matter of law, Defendant asks this Court to invoke Rule 2 “to suspend the Rules

 and review the claim of the lack of an atmosphere of judicial calm to prevent the

 manifest injustice of allowing [Defendant] to be convicted in violation of his rights to

 a trial before an impartial judge and an unprejudiced jury.”

¶7 Although the trial court’s statements could be construed as opinions on the role

 African Americans play in the justice system or the teachings of a “Baptist

 background[,]” the opinions did not go to “fact[s] to be decided by the jury.” N.C. Gen.

 Stat. § 15A-1222. As a result, a remaining vehicle for this Court to review

 Defendant’s unpreserved argument is Appellate Rule 2:

 To prevent manifest injustice to a party, or to expedite
 decision in the public interest, either court of the appellate
 division may, except as otherwise expressly provided by
 these rules, suspend or vary the requirements or provisions
 of any of these rules in a case pending before it upon
 application of a party or upon its own initiative, and may
 order proceedings in accordance with its directions.

 N.C. R. App. P. 2. “Rule 2 relates to the residual power of our appellate courts to

 consider, in exceptional circumstances, significant issues of importance in the public

 interest or to prevent injustice which appears manifest to the Court and only in such

 instances.” State v. Campbell, 369 N.C. 599, 603, 799 S.E.2d 600, 602 (2017)
 STATE V. CAMPBELL

 2021-NCCOA-563

 Opinion of the Court

 (emphasis in original) (citation omitted). Here, noting that “Defendant has

 sufficiently shown he is entitled to a new trial[,]” the State concedes “that this is one

 of the narrow circumstances in which it is appropriate for this Court to invoke Rule

 2.” We agree that this case presents an exceptional circumstance justifying the use

 of Rule 2. See id. As a result, in the exercise of our discretion, we suspend Rule

 10(a)(1)’s preservation requirements under Rule 2 and review the merits of

 Defendant’s argument. N.C. R. App. P. 2.

 B. Analysis

¶8 Defendant argues he is entitled to a new trial because the trial court’s

 statements “intimidated the jurors from exercising their beliefs, free will, or judgment

 throughout the remainder of jury selection and the trial” and “also surprisingly

 interjected race into this matter.”1 The State concedes that the trial court’s

 statements constitute structural error and Defendant is entitled to a new trial.

 Structural error is a rare form of constitutional error
 resulting from structural defects in the constitution of the
 trial mechanism which are so serious that a criminal trial
 cannot reliably serve its function as a vehicle for
 determination of guilt or innocence.

 1 We note that the same trial judge made similar comments during jury selection in State v.

 Farrior, COA20-513, filed concurrently with this opinion. However, in Farrior, because we
 vacated the defendant’s conviction based on insufficient evidence of the offense charged, we
 did not substantively address the trial court’s comments.
 STATE V. CAMPBELL

 2021-NCCOA-563

 Opinion of the Court

 State v. Garcia, 358 N.C. 382, 409, 597 S.E.2d 724, 744 (2004) (internal citations and

 quotation marks omitted). Structural “error[ ] is reversible per se.” Id. The United

 States Supreme Court has identified six instances of structural error; this case

 implicates an instance of “a biased trial court judge[.]” State v. Polke, 361 N.C. 65,

 73, 638 S.E.2d 189, 194 (2006) (citation omitted); see also State v. Frink, 158 N.C.

 App. 581, 587, 582 S.E.2d 617, 620 (2003) (“Structural error may arise by the absence

 of an impartial judge.” (citation omitted)). A biased trial court judge is a structural

 error requiring a new trial because it is a “well-recognized rule that every person

 charged with a crime has a right to a trial before an impartial judge and an

 unprejudiced jury in an atmosphere of judicial calm.” State v. Cousin, 292 N.C. 461,

 462, 233 S.E.2d 554, 556 (1977) (citation omitted).

¶9 The trial court’s open court comments encouraging juror participation were

 specifically directed at African Americans in the venire. These comments appear to

 reflect the trial court’s desire that Defendant—who is African American—have a fair

 trial by virtue of a representative jury. But “the probable effect or influence upon the

 jury, and not the motive of the judge, determines whether the party whose right to a

 fair trial has been impaired is entitled to a new trial.” State v. Bryant, 189 N.C. 112,

 114, 126 S.E. 107, 108 (1925). Our Supreme Court has cautioned that

 [m]any decisions have warned that remarks made before
 prospective jurors must be engaged in with the greatest of
 care and that the judge must be careful not to make any
 STATE V. CAMPBELL

 2021-NCCOA-563

 Opinion of the Court

 statement or suggestion likely to influence the decision of
 the jurors when called upon later to sit in a given case.

 ....

 “. . . The judge should be the embodiment of even and exact
 justice. He should at all times be on the alert, lest, in an
 unguarded moment, something be incautiously said or
 done to shake the wavering balance, which, as a minister
 of justice, he is supposed, figuratively speaking, to hold in
 his hands. Every suitor is entitled by the law to have his
 cause considered with the ‘cold neutrality of the impartial
 judge,’ and the equally unbiased mind of a properly
 instructed jury. This right can neither be denied nor
 abridged.”

 State v. Carriker, 287 N.C. 530, 533–34, 215 S.E.2d 134, 137–38 (1975) (quoting

 Withers v. Lane, 144 N.C. 184, 56 S.E. 855 (1907)) (emphasis in original).

¶ 10 Further, courts have cautioned that irrelevant references to religion, race, and

 other immutable characteristics can impede a defendant’s right to equal protection

 and due process. See Miller v. State of N.C., 583 F.2d 701, 707 (4th Cir. 1978) (“One

 of the animating purposes of the equal protection clause of the fourteenth

 amendment, and a continuing principle of its jurisprudence, is the eradication of

 racial considerations from criminal proceedings.” (citation omitted)); see also United

 States v. Runyon, 707 F.3d 475, 494 (4th Cir. 2013) (“The Supreme Court has long

 made clear that statements that are capable of inflaming jurors’ racial or ethnic

 prejudices ‘degrade the administration of justice.’ Where such references are legally

 irrelevant, they violate a defendant’s rights to due process and equal protection of the
 STATE V. CAMPBELL

 2021-NCCOA-563

 Opinion of the Court

 laws . . . .” (citation omitted)). Here, the trial court’s interjection of race and religion

 could have negatively influenced the jury selection process. After observing the trial

 court admonish prospective juror Hairston in an address to the entire venire, other

 potential jurors—especially African American jurors—would likely be reluctant to

 respond openly and frankly to questions during jury selection regarding their ability

 to be fair and neutral, particularly if their concerns arose from their religious beliefs.

 We hold the trial’s statements constituted structural error and award Defendant a

 new trial.2

 III. Conclusion

¶ 11 Because the trial court’s statements improperly injected race and religion into

 the voir dire and violated Defendant’s right to a trial before an impartial jury, we

 vacate Defendant’s conviction and remand for a new trial.

 NEW TRIAL.

 Judge Tyson concurs.

 Judge Dillon dissents.

 2 Because we award Defendant a new trial, we need not address Defendant’s argument that

 being sentenced as a habitual felon violated his rights to be free of cruel and unusual
 punishment. However, we note that Defendant’s brief acknowledges that “this Court has
 previously upheld the statutory scheme against an identical challenge and raises this issue
 in brief to urge the Court to re-examine its prior holdings[.]”
 No. COA20-646 – State v. Campbell

 DILLON, Judge, dissenting.

¶ 12 Defendant argues that he is entitled to a new trial based on comments made

 by the trial judge during jury selection (“voir dire”) as she was excusing a potential

 juror from service. The potential juror, who is African American, stated that he could

 not sit on a jury based on his Baptist religion. Defendant is also African American.

 The trial judge, who is also African American, stated that she too was a Baptist and

 appeared skeptical of the juror’s excuse, stating that there was nothing in her faith

 that prevented her from faithfully serving on a jury, but gave him the benefit of the

 doubt and excused him. However, as the trial judge was excusing the juror, she

 directed comments to the remaining African Americans in the jury pool, admonishing

 them as to their duty to serve and the importance of their willingness to serve to

 better ensure that African American defendants receive a fair trial.

¶ 13 The majority concludes that the trial judge’s comments constituted structural

 error, thus requiring a new trial. I agree with the majority that, though the trial

 judge may have had good intentions in making her comments, some of her word choice

 was inappropriate. However, I disagree with the majority that Defendant is entitled

 to a new trial. I do not believe that the trial judge’s comments amounted to structural

 error. In any event, even if her comments did constitute structural error, Defendant

 failed to preserve any “structural error” or other constitutional argument. And given

 the low likelihood that the trial judge’s comments caused prejudice to Defendant, I

 would not invoke Appellate Rule 2 to reach the issue. Furthermore, to the extent that
 STATE V. CAMPBELL
 2021-NCCOA-563
 DILLON, J., dissenting

 the trial judge’s comments constituted a non-constitutional error, I do not believe her

 comments amounted to reversible error. Accordingly, I dissent.

 1. Analysis

 A. No Structural Error

¶ 14 Defendant argues the trial judge’s comments during voir dire directed to

 potential African American jurors constituted structural error because they exhibited

 bias on her part. The State agrees with Defendant. However, I disagree that the

 comments constituted structural error. While her comments were inartful and some

 of her word choice was inappropriate, they do not rise to the level of structural error.

¶ 15 Constitutional errors, when preserved, are generally subject to harmless error

 analysis on appeal. However, our Supreme Court, quoting the United States

 Supreme Court, has held that certain constitutional errors rise to the level of

 “structural error” and are “reversible per se,” without having to engage in any

 prejudice analysis:

 Structural error is a rare form of constitutional error . . .
 which [is] so serious that “a criminal trial cannot reliably
 serve its function as a vehicle for determination of guilt or
 innocence.”

 State v. Garcia, 358 N.C. 382, 409, 597 S.E.2d 724, 744 (2004) (quoting Arizona v.

 Fulminante, 499 U.S. 279, 309-10 (1991). Indeed, the United States Supreme Court

 differentiates structural error from other constitutional errors as follows:
 STATE V. CAMPBELL
 2021-NCCOA-563
 DILLON, J., dissenting

 [T]he defining feature of a structural error is that it affects
 the framework within which the trial proceeds, rather than
 being simply an error in the trial process itself.

 Weaver v. Massachusetts, ___ U.S. ___, ___, 137 S. Ct. 1899, 1907 (2017) (quotation

 omitted).

¶ 16 Our Supreme Court and the United States Supreme Court have identified

 those types of constitutional errors which rise to the level of structural error. One

 type of structural error, which Defendant states is the error in this case, occurs when

 the trial is presided over by “a biased trial judge.” The case oft cited (and referenced

 by both parties in their appellate briefs) for the proposition that a biased judge

 constitutes structural error is Tumey v. Ohio, 273 U.S. 510 (1927). In that case, the

 Court stated that when the presiding judge “has a direct, personal, substantial,

 pecuniary interest in reaching a conclusion against [the defendant] in his case,” he

 (the defendant) is per se denied due process. Id. at 523. The Court differentiated

 such conflicts of interest from mere concerns over “matters of [the trial judge’s]

 kinship, personal bias, state policy, [and] remoteness of interest,” stating that these

 lesser concerns are not constitutional concerns, but rather are “matters merely of

 legislative discretion.” Id. at 523.

¶ 17 Here, Defendant does not make any claim that the trial judge had any personal

 interest in his case. Rather, the crux of Defendant’s argument is that the trial judge

 made inappropriate comments during voir dire that may have caused prospective
 STATE V. CAMPBELL
 2021-NCCOA-563
 DILLON, J., dissenting

 jurors “from exercising their beliefs, free will, or judgment throughout the remainder

 of jury selection and the trial.”

¶ 18 It may be true that a judge’s comments that affect the impartiality of the jury

 may constitute error, even constitutional error. However, such comments do not

 constitute “structural error.” That is, such comments are not per se reversible.

 Rather, there must be an analysis concerning the prejudice caused by the comments;

 whether it is the defendant’s burden to show that the comments were prejudicial, or

 the State’s burden to show that the comments were not prejudicial, beyond a

 reasonable doubt. Defendant cites State v. Carter for the proposition that the trial

 court must be careful in her comments to the jury, but even in that case our Supreme

 Court recognized that inappropriate comments by the judge are not per se reversible:

 The bare possibility, however, that an accused may have
 suffered prejudice from the conduct or language of the
 judge is not sufficient to overthrow an adverse verdict. The
 criterion for determining whether or not the trial judge
 deprived an accused of his right to a fair trial by improper
 comments or remarks in the hearing of the jury is the
 probable effect of the language upon the jury. In applying
 this test, the utterance of the judge is to be considered in
 the light of the circumstances under which it was made.
 This is so because a word is not a crystal, transparent and
 unchanged; it is the skin of a living thought and may vary
 greatly in color and content according to the circumstances
 and the time in which it is used.

 State v. Carter, 233 N.C. 581, 583, 65 S.E.2d 9, 10-11 (1951) (cleaned up). In fact,

 neither Defendant nor the majority cite to any case for the proposition that the
 STATE V. CAMPBELL
 2021-NCCOA-563
 DILLON, J., dissenting

 comments of a trial judge which might influence the ability of the jury to remain

 impartial constitutes “structural” error. Just last year, our Supreme Court engaged

 in a prejudicial error analysis where the alleged error, involving the actions of a trial

 judge during voir dire, may have resulted in a racially biased jury. State v. Crump,

 376 N.C. 375, 392, 851 S.E.2d 904, 917-18 (2020) (holding that “the trial court’s

 restrictions on defendant’s questioning during voir dire [about prospective juror’s

 racial bias] were prejudicial”).

 B. Waiver

¶ 19 In any event, Defendant waived his right to assert that the trial judge’s

 comments constituted structural or other constitutional error. Our Supreme Court

 has recognized that “[s]tructural error, no less than other constitutional error, should

 be preserved at trial.” Garcia, 358 N.C. at 410, 597 S.E.2d at 745. The United States

 Supreme Court also requires structural errors to be preserved for review on appeal.

 Johnson v. United States, 520 U.S. 461, 465-66 (1997).

¶ 20 Here, Defendant had the opportunity to object to the trial judge’s comments

 and ask for a continuance, where a new jury pool would be available, but no objection

 was made. And Defendant has not articulated on appeal how manifest injustice

 would result by our Court refusing to invoke Rule 2 to consider his unpreserved

 constitutional arguments. There is no showing that the trial judge demonstrated any

 bias or expressed any bias about Defendant, or his case, or that any juror was biased
 STATE V. CAMPBELL
 2021-NCCOA-563
 DILLON, J., dissenting

 against Defendant by her comments. Further, I do not perceive the trial judge’s

 comments as a means of coercing prospective jurors to be dishonest in their voir dire

 answers. Rather, she was admonishing just the opposite—for the jurors to be honest

 about whether their objection to sitting on the jury was truly based on a religious

 reason.

¶ 21 I note Defendant’s contention that his argument concerning the trial judge’s

 comments are otherwise preserved because the comments violated the statutory

 mandate codified in Section 15A-1222 of our General Statutes. This statute provides

 that the trial judge “may not express during any stage of the trial any opinion in the

 presence of the jury on any question of fact to be decided by the jury.” N.C. Gen. Stat.

 § 15A-1222 (2019). I do not believe, however, that this statute has been implicated,

 as Defendant does not make any argument that the trial judge’s comments had any

 relation to any question of fact that the jury was to decide in his case. Rather, her

 comments only concerned jury service and ensuring that African American

 defendants receive a fair trial.

 C. No Reversible Error

¶ 22 A trial judge has broad discretion in addressing potential jurors during voir

 dire to admonish them to be honest in their answers to questions. Though, I do agree

 with my colleagues that some of the word choice by the trial judge here was

 inappropriate.
 STATE V. CAMPBELL
 2021-NCCOA-563
 DILLON, J., dissenting

¶ 23 First, the trial judge should not have directed comments to just the African

 Americans in the jury pool about the importance of jury service, but she should have

 directed her comments more generally to the jury pool as a whole.

¶ 24 Second, she should have been more careful in her word choice when she

 suggested that she was among those who felt that the judicial system is not fair to

 African American defendants, by stating: “Everyday we are in the newspaper

 stating we don’t get fairness in the judicial system. Every single day. But none of

 us – most African Americans do not want to serve on a jury.” (Emphasis added.)

¶ 25 Third, she should not have injected race by stating an irrelevant statistic that

 ninety percent (90%) of defendants are African Americans.

¶ 26 Assuming we were to reach Defendant’s arguments concerning the trial

 judge’s inappropriate comments, I do not see how the comments were prejudicial

 against Defendant. I do not see any likelihood that someone remained on the jury

 who abandoned his/her presumption that Defendant was innocent based on anything

 the trial judge said. The trial judge never made any comment suggesting that

 Defendant was guilty but rather that Defendant was entitled to jurors who could be

 fair in assessing the case against him. Also, I do not see any likelihood that her

 comments caused someone to be seated on the jury who was prejudiced against

 Defendant, who would have otherwise spoken up about his/her prejudice but for the

 trial judge’s comments.
 STATE V. CAMPBELL
 2021-NCCOA-563
 DILLON, J., dissenting

¶ 27 The trial judge’s comments, taken at face value, admonished the African

 Americans in the jury pool to be honest in advising the attorneys about their ability

 to be fair and impartial in their service.

 II. Conclusion

¶ 28 Though the trial judge may have had good intentions, in my opinion she did

 cross the line in her word choice during voir dire. I do not believe, however, that her

 comments constituted structural error. Defendant’s arguments, whether based on

 the constitution or on N.C. Gen. Stat. § 15A-1222, are not preserved; and her

 comments were not egregiously prejudicial against Defendant—if prejudicial against

 him at all—to warrant invocation of Rule 2 of our Rules of Appellate Procedure.

¶ 29 Accordingly, I conclude Defendant had a fair trial, free from reversible error.

 This includes the trial court’s sentencing of Defendant as a habitual felon. My vote

 is NO ERROR.